## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Chapter 11 |
| **URBAN EMPIRE, LLC,** | **Subchapter V** |
|    Debtor | **Case No. 23-20876-SMG** |

_____/

| | |
|---|---|
| **URBAN EMPIRE, LLC,** | Adv. Pro. No. _____ |
|     **Plaintiff,** | |
| **vs.** | |
| **TRBW, LLC dba VANTAGE ECOMMERCE,** | |
|     **Defendant.** | |

_____/

### COMPLAINT FOR
### <u>TURNOVER OF ESTATE PROPERTY</u>

Urban Empire, LLC, as debtor and debtor-in-possession in the above captioned Chapter 11 Subchapter V case ("**Plaintiff**" or "**Debtor**"), pursuant to Section 542 of Title 11 of the United States Code (the "**Bankruptcy Code**"), hereby sues TRBW, LLC d/b/a Vantage Ecommerce ("**Defendant**" or "**Vantage**") and alleges as follows:

### <u>NATURE OF THE ACTION</u>

The Debtor brings this adversary complaint against Vantage to obtain turnover of property of the estate. The Debtor executed numerous purchase orders with Vantage under which it agreed to provide the Debtor with products that were authorized to be sold through Amazon's online e-commerce platform. Vantage has breached nine (9) purchase orders and failed to deliver products that have been paid for by the Debtor and to which the Debtor has title. Despite the Debtor's repeated requests to Vantage to fulfill its obligations to the Debtor, Vantage has refused to ship the products, seeking for itself a windfall at the expense of the estate and its creditors.

The purpose of the Debtor's request for turnover is to marshal assets of the estate for the benefit of all creditors and to ensure that all creditors are treated fairly and equitably. By refusing to turnover estate property to the Debtor, Vantage has deprived the Debtor of access to more than $800,000.00 worth of property that would be used to satisfy creditor claims in the Chapter 11 Case. As a result of its failure to turn over the Debtor's property, Vantage is attempting to circumvent the Bankruptcy Code and, in doing so, frustrating its purpose impacting the Debtor's ability to recover and maximize distributions to its creditors. Accordingly, the Debtor respectfully requests that the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") (i) declare that Vantage be compelled to turn over property of the Debtor's estate that it continues to improperly hold; or, alternatively, (ii) determine the value of products, along with lost profits resulting from Vantage's failure to deliver the products to the Debtor; and (iii) grant the Debtor any further relief, at law or in equity, to which it is entitled.

## JURISDICTION AND VENUE

1.     On December 29, 2023, the Debtor commenced with the Bankruptcy Court, a voluntary case under Chapter 11 Subchapter V of the Bankruptcy Code (the "**Chapter 11 Case**").

2.     This adversary complaint is brought pursuant to Section 542 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure and arises from and is related to the Chapter 11 Case.

3.     The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

4.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (b)(2)(E). The Plaintiff consents to entry of final orders and judgments by the Bankruptcy Court in this adversary proceeding in accordance with Bankruptcy Rule 7008(a).

5.      Venue is proper in this district, pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

6.      The Plaintiff owned and managed an e-commerce service business through the Amazon platform for the benefit of its customers throughout the United States.  As part of its e-commerce business, the Plaintiff would recommend and order authorized e-commerce products for its customers to sell on Amazon.

7.      The Defendant is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Miami, Florida.  The Defendant operates a e-commerce business that sells and distributes products from wholesalers to Amazon sellers that "align with the platform's stringent standards."

## GENERAL ALLEGATIONS

**I.      The Defendant's Relationship With the Plaintiff**

8.      The Plaintiff 's filing of its Chapter 11 Case was precipitated by the actions of the Defendant, a company that specializes in wholesale product procurement specifically catering to the fulfillment of purchase orders for products authorized for sale on Amazon seller'.

9.      The Plaintiff 's relationship with the Defendant began by the owner and operator of the Defendant, Javon Jackson ("**Jackson**"), purchasing the contact information of the Chief Executive Officer of the Plaintiff, Jaykaran Kambo ("**Kambo**"), in order to solicit business from the Plaintiff.

10.     After numerous phone conversations and an in person meeting between Jackson and Kambo in which they discussed establishing a business relationship, the Plaintiff commenced doing business with the Defendant.

11.     Starting in or around August 7, 2023 and continuing through to September 26, 2023, the Plaintiff purchased various products for its customers by placing purchase orders (each a "**PO**", and collectively, the "**POs**") with the Defendant, which the Defendant would then accept by issuing an invoice to the Plaintiff.

12.     All products purchased through the POs were to be shipped to an Amazon fulfillment center for the Plaintiff's customers to sell on their Amazon store within a two (2) week period of time after receipt of payment from the Plaintiff.

13.     After various issues arose with the Defendant's ability to fulfill its obligations to the Plaintiff in accordance with the terms of their agreement, the parties decided to have a meeting on October 12, 2023 and October 19, 2023 in an effort to resolve the issues and continue their business relationship (the "**10/12/23 Meeting**" and "**10/19/23 Meeting**", respectively).

14.     During the 10/12/23 Meeting and 10/19/23 Meeting, the Defendant and Plaintiff resolved most, if not all, of the issues that arose regarding the Defendant's performance of its obligations under the POs, which included the Defendant agreeing (i) to ship some of the products to Amazon fulfilment centers after providing Plaintiff with necessary documentation for Amazon to authorize their sale on its platform; (ii) to provide Plaintiff with a refund for some products that were not authorized for sale on the Amazon platform; and (iii) to ship to the Plaintiff's warehouse located in San Jose, California (the "**Plaintiff's Warehouse**") some of the products that could not be shipped to an Amazon fulfillment center.

15.     On October 20, 2023, the Defendant emailed the Plaintiff and advised that it was (i) ending its business relationship with the Plaintiff; (ii) closing the Plaintiff's account; (iii) issuing the Plaintiff a credit for some products it could not procure and deliver; (iii) shipping to the Plaintiff's Warehouse some of the products that were not shipped to an Amazon fulfillment center

within the two (2) week period of time after receipt of payment from the Plaintiff; and (iv) informing the Plaintiff that all of the POs were subject to the Defendant's (a) Refund Policy, (b) Terms of Service, and (c) Shipping Policy (collectively, the "**Defendant's Terms of Service**") that were set forth on the Defendant's website (the "**Defendant's Email**").   A copy of the Defendant's Email from October 20, 2023 is attached hereto as **<u>Exhibit A</u>**.

16.     Contrary to the assertions in the Defendant's Email, none of the POs placed by the Plaintiff and accepted by the Defendant were subject to the Defendant's Terms Service.

**II.     <u>The Plaintiff's Purchase of Products the Defendant Failed to Deliver</u>**

> **A.     <u>The 277, 278, & 283 Purchase Orders</u>**

17.     On August 7, 2023, the Plaintiff placed a PO with the Defendant which the Defendant accepted through its issuance of Invoice No. 0000277 (the "**277 PO**") for the purchase of, *inter alia*, 400 units of 32-ounce bottles of Detoxify Mega Clean Herbal Cleanse for $18.25 a unit for a total of $7,300.00 (the "**FO Herbal Cleanse Products**"). A copy of the 277 PO is attached hereto as **<u>Exhibit B</u>**.

18.     The total payment amount due from the Plaintiff for its purchase of all of the products listed in the 277 PO was $31,186.00.

19.     The due date for Plaintiff to pay the total amount due for all of the products listed in the 277 PO was September 6, 2023.

20.     On August 8, 2023, the Plaintiff placed another PO which the Defendant accepted by through its issuance of Invoice Number 0000278 (the "**278 PO**") for the purchase of, *inter alia*, 900 units of Jungle Gym Kingdom Swing Seat Replacement Kit at $17.00 a unit for a total of $15,300.00 (the "**JGK Products**").  A copy of 278 PO is attached thereto as **<u>Exhibit C</u>**.

21.    The total payment amount due from the Plaintiff for its purchase of all of the products listed in the 278 PO was $112,110.00.

22.    The due date for Plaintiff to pay the total amount due for all of the products listed in the 277 PO was September 7, 2023.

23.    On August 8, 2023, the Plaintiff placed another PO which the Defendant accepted through its issuance of Invoice No. 0000283 (the "**283 PO**") for the purchase of, *inter alia*:

> (i)    700 units of Thorne Women's Multi 50+ Daily Multivitamin) at $31.00 a unit for a total of $21,700.00 (the "**Thorne Multivitamin Products**");
>
> (ii)    500 units of Xyron Repositionable Adhesive Refill at $42.00 a unit for a total of $21,000.00 (the "**Xyron Products**"); and
>
> (iii)    1,300 units of six (6) pack Pentel R.S.V.P. Ballpoint Pens at $7.00 a unit for a total of $9,100.00 (the "**Pentel Products**").

A copy of the 283 PO is attached hereto as **<u>Exhibit D</u>**.

24.    The total amount due from the Plaintiff to the Defendant for its purchase of all of the products listed in the 283 PO was $117,000.00.

25.    The due date for Plaintiff to pay the Defendant the total amount due for all of the products listed in the 283 PO was September 9, 2023.

26.    On August 8, 2023, the Plaintiff wired $143,286.00 to the Defendant to pay for a portion of the total amounts due for its purchase of products listed in the 277 PO, 278 PO, and 283 PO.

27.    On August 10, 2023, the Plaintiff wired $117,000.00 to the Defendant to pay for the remaining portion of the total amount due for its purchase of the products listed in the 277 PO, 278 PO, and 283 PO.

28.     The Defendant has not shipped the FO Herbal Cleanse Products the Plaintiff purchased to an Amazon fulfillment center in accordance with the terms of their agreement.

29.     Upon information and belief, the Defendant is still in possession, custody, or control of the FO Herbal Cleanse Products.

30.     The Defendant has not shipped the JGK Products the Plaintiff purchased to an Amazon fulfillment center in accordance with the terms of their agreement.

31.     Upon information and belief, the Defendant is still in possession, custody, or control of the JGK Products.

32.     The Defendant has not shipped the Thorne Multivitamin Products and Xyron Products purchased by the Plaintiff to an Amazon fulfillment center in accordance with the terms of their agreement.

33.     Upon information and belief, the Defendant is still in possession, custody, or control of the Thorne Multivitamin Products and Xyron Products.

34.     The Defendant was informed that Amazon could not accept shipment of the Pentel Products because there was no space left at the customer's Amazon store to which the products were assigned.

35.     After the Defendant was informed that Amazon would not accept shipment of the Pentel Products because of the storage issue at the customer's Amazon store to which the products were assigned, the Defendant offered to sell the products to another one its customers and issue the Plaintiff a cash refund during the 10/12/23 Meeting.

36.     At the 10/12/23 Meeting, the Plaintiff accepted the Defendant's offer for it to sell the Pentel Products to another one of its customers and issue it a cash refund.

37.     During the 10/19/23 Meeting, the Plaintiff and Defendant reiterated the agreement reached between them during the 10/12/23 Meeting to resolve the issues regarding the Pentel Products.

38.     On October 20, 2023, the Defendant's Email repudiated the agreement reached between the Plaintiff and Defendant in the 10/12/23 Meeting and informed the Plaintiff that it would be shipping the Pentel Products to the Plaintiff's Warehouse.

39.     The Plaintiff never received the Pentel Products.

40.     Upon information and belief, the Defendant is still in possession, custody, or control of the Pentel Products.

**B.     The 297 & 298 Purchase Orders**

41.     On August 15, 2023, the Plaintiff placed another PO, which the Defendant accepted through the issuance of Invoice No. 0000297 (the "**297 PO**"), for the purchase of, *inter alia*:

>   (i)     1,000 units of 31.9 ounces of Thorne Whey Protein Isolate at $35.00 a unit for a total of $35,000.00 (the "**Thorne Whey Products**"); and
>
>   (ii)    1,000 units of 1.7 fluid ounces of First Aid Beauty Firming Cream with Peptides at $24.00 a unit for a total of $24,000.00 (the "**FO Beauty Cream Products**").

A copy of the 297 PO is attached hereto as **Exhibit E**.

42.     The total amount due from the Plaintiff to the Defendant for its purchase of all of the products listed in the 297 PO was $140,970.00.

43.     In consideration of credits in the amount of $116,480.75 issued to the Plaintiff by the Defendant arising from prior undelivered products it purchased, the total amount due to be paid

for the Plaintiff's purchase of the products listed in the 297 PO that were not credited was $24,309.25.

44.     The due date for Plaintiff to pay the Defendant the $24,309.25 for the Plaintiff's purchase of all of the products listed in the 297 PO that were not credited was September 14, 2023.

45.     On August 15, 2023, the Plaintiff placed another PO, which the Defendant accepted through its issuance of Invoice No. 0000298 (the "**298 PO**"), for the purchase of, *inter alia*, 1,933 units of 16-ounce bottles of Arm & Hammer Fruit & Vegetable Wash at $17.00 a unit for a total of $32,861.00 (the "**AH Wash Products**").  A copy of the 298 PO is attached hereto as **Exhibit F**.

46.     The total amount due from the Plaintiff to the Defendant for its purchase of all of the products listed in the 298 PO was $70,861.00.

47.     The due date for Plaintiff to pay the Defendant the total amount due for all of the products listed in the 298 PO was September 14, 2023.

48.     On August 16, 2023, the Plaintiff wired $97,170.45 to the Defendant to pay for the total amounts due for the products listed in the 297 PO, in which a credit was not applied, and the 298 PO.

49.     The Defendant was informed that Amazon could not accept shipment of the Thorne Whey Products because there was no space left at the customer's store to which the products were assigned.

50.     After the Defendant was informed that Amazon would not accept shipment of the Thorne Whey Products because of the storage issue at the customer's Amazon store to which the products were assigned, the Defendant offered to ship the products to the Plaintiff's Warehouse.

51.     The Plaintiff accepted the Defendant's offer to ship the Thorne Whey Products to the Plaintiff's Warehouse.

52.     At the 10/12/23 Meeting, the Plaintiff was informed that the Defendant had not shipped the Thorne Whey Products to the Plaintiff's Warehouse.

53.     At the 10/19/23 Meeting, the Plaintiff was informed that the Defendant could not ship the Thorne Whey Products to the Plaintiff's Warehouse because the wholesaler from whom the product was purchased would not authorize shipment of the products to any storage facility other than an Amazon fulfillment center.

54.     Upon information and belief, the Defendant is still in possession, custody, or control of the Thorne Whey Products.

55.     At the time the Plaintiff purchased the FO Beauty Cream Products, the products were authorized for sale on Amazon; however, after the products were purchased the Plaintiff was informed that the products were no longer authorized for sale on Amazon.

56.     After the Plaintiff was informed that the FO Beauty Cream Products were no longer authorized for sale on Amazon, the Defendant offered to sell the products to another one of its customers and issue the Plaintiff a cash refund during the 10/12/23 Meeting.

57.     At the 10/12/23 Meeting, the Plaintiff accepted the Defendant's offer for it to sell the FO Beauty Cream Products to another one of its customers and issue it a cash refund.

58.     During the 10/19/23 Meeting, the Plaintiff and Defendant reiterated the agreement reached between them during the 10/12/23 Meeting to resolve the issues regarding the FO Beauty Cream Products.

59.     On October 20, 2023, the Defendant's Email repudiated the agreement reached between the Plaintiff and Defendant in the 10/12/23 Meeting and informed the Plaintiff that it would be shipping the FO Beauty Cream Products to the Plaintiff's Warehouse.

60.     The Plaintiff never received the FO Beauty Cream Products.

61.     Upon information and belief, the Defendant is still in possession, custody, or control of the FO Beauty Products.

62.     The Defendant shipped 400 out of the 1,933 units of AH Products purchased by the Plaintiff.

63.     Due to the delay in the Defendant procuring the remaining 1,533 units of AH Products purchased by the Plaintiff, the Plaintiff informed the Defendant that it was rejecting shipment and requesting a full cash refund for the remaining 1,533 units that were not shipped in accordance with their agreement.

64.     After the Plaintiff rejected and requested a refund for the remaining 1,533 units of AH Products, the Defendant offered to sell the products to another one of its customers and issue the Plaintiff a full cash refund during the 10/12/23 Meeting.

65.     At the 10/12/23 Meeting, the Plaintiff accepted the Defendant's offer for it to sell the 1,533 units of AH Products to another one of its customers and issue it a full cash refund.

66.     During the 10/19/23 Meeting, the Plaintiff and Defendant reiterated the agreement reached between them during the 10/12/23 Meeting to resolve the issues regarding the 1,533 units of AH Products.

67.     On October 20, 2023, the Defendant's Email repudiated the agreement reached between the Plaintiff and Defendant in the 10/12/23 Meeting and informed the Plaintiff that it would be shipping the 1,533 units of AH Products to the Plaintiff's Warehouse.

68.     After receipt of the Defendant's Email, the Plaintiff informed both the Defendant and the shipping carrier that it was rejecting shipment of the AH Products to the Plaintiff's Warehouse.

69.     Even after informing both the Defendant and shipping carrier of that it was rejecting the shipment of the AH Products, the nine (9) pallets were shipped and delivered to the Plaintiff's Warehouse.

70.     Eight (8) out of the nine (9) pallets that were shipped and delivered to the Plaintiff's Warehouse were damaged and not the AH Products purchased by the Plaintiff.

71.     Upon information and belief, the Defendant is still in possession, custody, or control of eight (8) pallets worth of units of the AH Products purchased by the Plaintiff.

**C.     The 308 Purchase Order**

72.     On August 25, 2023, the Plaintiff placed another PO which the Defendant accepted through its issuance of Invoice No. 0000308 (the "**308 PO**") for the purchase of, *inter alia*:

> (i)     800 units of 32-ounce bottles of Detoxify Mega Clean Herbal Cleanse at $19.00 a unit for a total of $15,200.00 (the "**SO Herbal Cleanse Products**");
>
> (ii)    350 units of Mueller Austria Premium Espresso Machine at $185.00 a unit for a total of $64,750.00 (the "**Mueller Products**"); and
>
> (iii)   850 units of 1.7 fluid ounces of First Aid Beauty Firming Cream with Peptides at $19.00 a unit for a total of $16,150.00 (the "**SO Beauty Cream Products**").

A copy of the 308 PO is attached hereto as **Exhibit G**.

12

73.    The total amount due from the Plaintiff to the Defendant for its purchase of all of the products listed in the 308 PO was $151,475.00.

74.    The due date for Plaintiff to pay the Defendant the total amount due for all of the products listed in the 308 PO was September 24, 2023.

75.    On August 29, 2023, the Plaintiff wired $200,000.00 to the Defendant to pay for the total amount due for its purchase of the products listed in the 308 PO.

76.    The Defendant attempted to ship the SO Herbal Cleanse Products purchased by the Plaintiff in accordance with the terms of their agreement; however, the Defendant was unable to ship the products to an Amazon fulfillment center because the products were not authorized for sale on Amazon.

77.    After the Plaintiff and Defendant attempted, but failed, to get the documentation necessary for Amazon to authorize the sale of the SO Herbal Cleanse Products on its platform, the Defendant offered to sell the products to another one of its customers and issue the Plaintiff a full cash refund during the 10/12/23 Meeting.

78.    At the 10/12/23 Meeting, the Plaintiff accepted the Defendant's offer to sell the SO Herbal Cleanse Products to another one of its customers and issue it a cash refund.

79.    During the 10/19/23 Meeting, the Plaintiff and Defendant reiterated the agreement reached between them during the 10/12/23 Meeting to resolve the issues regarding the SO Herbal Cleanse Products.

80.    Upon information and belief, the Defendant is still in possession, custody, or control of the SO Herbal Cleanse Products.

81.     Plaintiff's purchase of Mueller Products was conditioned upon the Defendant obtaining documentation necessary for Amazon to authorize the sale of the products on its platform.

82.     On multiple occasions before the 10/12/23 Meeting, the Defendant informed the Plaintiff that it was working on getting the Plaintiff documentation necessary for Amazon to authorize the sale of the products on its platform.

83.     At the 10/12/23 Meeting, the Defendant informed the Plaintiff that it had not yet started the process to obtain the documents necessary for Amazon to authorize the sale of the Mueller Products on its platform.

84.     At the 10/12/23 Meeting, the Defendant informed the Plaintiff that it was now starting the process to obtain the documents necessary for Amazon to authorize the sale of the Mueller Products on its platform.

85.     At the 10/19/23 Meeting, the Plaintiff requested that the Defendant provide it with an update regarding the status of its efforts to obtain the documents necessary for Amazon to authorize the sale of the Mueller Products on its platform.

86.     At the 10/19/23 Meeting, the Defendant informed the Plaintiff that it had no update to provide it regarding the status of its efforts to obtain the documents necessary for Amazon to authorize the sale of the Mueller Products on its platform.

87.     At the 10/19/23 Meeting, the Plaintiff requested a full cash refund for its purchase of the Mueller Products because the Defendant failed to provide it with the documents necessary for Amazon to authorize the sale of the Mueller Products on its platform or even start the process to obtain those documents.

88.     On October 20, 2023, the Defendant's Email informed the Plaintiff that it would be issuing the Plaintiff (i) a credit in the amount of $58,275.00 for the Mueller Products, after charging it a ten percent (10%) fee to cancel the order; and (ii) the Plaintiff was required to use the credit within the next thirty (30) days or it would expire.

89.     The terms of the agreement between the Plaintiff and Defendant under PO 308 did not permit the Defendant to unilaterally issue the Plaintiff a refund in the form of a credit, subject to a ten percent (10%) cancellation fee.

90.     The Plaintiff never agreed to accept a refund in the form of credit, subject to a ten (10%) cancellation fee, for the Defendant's failure to provide it with document necessary for Amazon to authorize the sale of the Mueller Products on its platform.

91.     Upon information and belief, the Defendant is in possession, custody, or control of the Mueller Products.

92.     Plaintiff's purchase of SO Beauty Cream Products was subject to the Defendant timely shipping the products to an Amazon fulfillment center in accordance with the terms of their agreement under PO 308.

93.     On multiple occasions before the 10/12/23 Meeting, the Defendant requested the Plaintiff provide it with an update on when the SO Beauty Cream Products would be shipped to an Amazon fulfillment center.

94.     At the 10/12/23 Meeting, the Defendant informed the Plaintiff that it had encountered logistical issues and that the SO Beauty Cream Products would be shipped within a week and a half to an Amazon fulfillment center.

95.     At the 10/19/23 Meeting, the Defendant reiterated that shipment of SO Beauty Cream Products to an Amazon fulfillment center would occur within the time frame stated during the 10/12/23 Meeting.

96.     On October 20, 2023, the Defendant's Email informed the Plaintiff that it would no longer be shipping the SO Beauty Cream Products to an Amazon fulfillment center and instead shipping the products to the Plaintiff's Warehouse.

97.     The Plaintiff never received the SO Beauty Cream Products.

98.     Upon information and belief, the Defendant is still in possession, custody, or control of the SO Beauty Cream Products.

**D.    The 314 Purchase Order**

99.     On August 31, 2023, the Plaintiff placed another PO which the Defendant accepted through its issuance of Invoice No. 0000314 (the "**314 PO**") for the purchase of, *inter alia*:

(i)     5,000 units of Mederma Advanced Scar Gel at $7.25 a unit for a total of $36,250.00 (the "**Mederma Products**");

(ii)     2,000 units of Beauty of Joseon Serum Line Kit at $15.50 a unit for a total of $31,000.00 (the "**Joseon Serum Products**"); and

(iii)     900 units of COXIR Ultra Hyaluronic Cleansing Oil at $9.00 a unit for a total of $8,100.00 (the "**COXIR Products**"),

A copy of the 314 PO is attached hereto as **Exhibit H**.

100.     The total payment amounts due from the Plaintiff for its purchase of all of the products listed in the 314 PO was $112,850.00.

101.     In consideration of credits in the amount of $45,600.00 issued to the Plaintiff by the Defendant arising from prior undelivered products it purchased, the total amount due to be paid

for the Plaintiff's purchase of the products listed in the 314 PO that were not credited was $67,250.00.

102.    The due date for Plaintiff to pay the Defendant the $67,250.00 for the Plaintiff's purchase of all of the products listed in the 314 PO that were not credited was September 30, 2023.

103.    On September 5, 2023, the Plaintiff wired $67,250.00 to the Defendant to pay for the total amount due for the products listed in the 314 PO in which a credit was not applied.

104.    At the time the Plaintiff purchased the Mederma Products, the products were authorized for sale on Amazon; however, after the products were purchased, the Plaintiff was informed that the products were no longer authorized for sale on Amazon.

105.    After the Plaintiff was informed that the Mederma Products were no longer authorized for sale on Amazon, the Defendant offered to sell the products to another one of its customers and issue the Plaintiff a cash refund during the 10/12/23 Meeting.

106.    At the 10/12/23 Meeting, the Plaintiff accepted the Defendant's offer for it to sell the Mederma Products to another one of its customers and issue it a cash refund.

107.    During the 10/19/23 Meeting, the Plaintiff and Defendant reiterated the agreement reached between them during the 10/12/23 Meeting to resolve the issues regarding the Mederma Products.

108.    On October 20, 2023, the Defendant's Email repudiated the agreement reached between the Plaintiff and Defendant in the 10/12/23 Meeting and informed the Plaintiff that it would be shipping the Mederma Products to the Plaintiff's Warehouse.

109.    The Plaintiff never received the Mederma Products.

110.    Upon information and belief, the Defendant is still in possession, custody, or control of the Mederma Products.

111.    Plaintiff's purchase of the Joseom Serum Products was subject to the Defendant timely shipping the products to an Amazon fulfillment center in accordance with the terms of their agreement under PO 314.

112.    At the 10/12/23 Meeting, the Defendant informed the Plaintiff that it had encountered logistical issues and that the Joseon Serum Products would be shipped within two weeks to an Amazon fulfillment center.

113.    At the 10/19/23 Meeting, the Defendant reiterated that shipment of Joseon Serum Products to an Amazon fulfillment center would occur within the time frame stated during the 10/12/23 Meeting.

114.    On October 20, 2023, the Defendant's Email informed the Plaintiff that it would no longer be shipping the Joseom Serum Products to an Amazon fulfillment center and instead it would be shipping the products to the Plaintiff's Warehouse.

115.    The Plaintiff never received the Joseom Serum Products.

116.    Upon information and belief, the Defendant is still in possession, custody, or control of the Joseom Serum Products.

117.    Plaintiff's purchase of COXIR Products was subject to the Defendant timely shipping the products to an Amazon fulfillment center in accordance with the terms of their agreement under PO 314.

118.    At the 10/12/23 Meeting, the Defendant informed the Plaintiff that it had encountered logistical issues and that the COXIR Products would be shipped within two weeks to an Amazon fulfillment center.

119.    At the 10/19/23 Meeting, the Defendant reiterated that shipment of COXIR Products to an Amazon fulfillment center would occur within the time frame stated during the 10/12/23 Meeting.

120.    On October 20, 2023, the Defendant's Email informed the Plaintiff that it would no longer be shipping the COXIR Products to an Amazon fulfillment center and instead it would be shipping the products to the Plaintiff's Warehouse.

121.    The Plaintiff never received the COXIR Products.

122.    Upon information and belief, the Defendant is still in possession, custody, or control of the COXIR Products.

**E.    The 334 Purchase Order**

123.    On September 18, 2023, the Plaintiff placed a PO with the Defendant, which the Defendant accepted through its issuance of Invoice No. 0000334 (the "**334 PO**") for the purchase of, *inter alia*:

(i)     750 units of a 30 pack of YumEarth Organic Mini Candy Canes at $14.00 a unit for a total of $10,500.00 (the "**YumEarth Products**"); and

(ii)     575 units of Harvest Elite Slim SS Heirloom Salad Kit at $58.50 a unit for a total of $33,637.50 (the "**Heirloom Products**").

A copy of the 334 PO is attached hereto as **Exhibit I**.

124.    The total amount due from the Plaintiff to the Defendant for its purchase of all of the products listed in the 334 PO was $108,462.50.

125.    Due to a credit of $108,462.50 the Defendant issued to the Plaintiff arising from prior failures to deliver other products, the total amount of cash due to be paid from the Plaintiff under the 334 PO was $0.00

126. Plaintiff's purchase of YumEarth Products was subject to the Defendant timely shipping the products to an Amazon fulfillment center in accordance with the terms of their agreement under PO 334.

127. The Defendant shipped 624 units of YumEarth Products to the Plaintiff's Warehouse.

128. At the 10/12/23 Meeting, the Defendant informed the Plaintiff that the remaining 126 units of YumEarth Products had shipped and the Plaintiff would receive the products by the end of that week.

129. At the 10/19/23 Meeting, the Plaintiff had not received shipment of the remaining 126 units of YumEarth Products.

130. On October 20, 2023, the Defendant's Email informed the Plaintiff that it would shipping the remaining 126 units of YumEarth Products to the Plaintiff's Warehouse.

131. The Plaintiff never received the remaining 126 units of YumEarth Products.

132. Upon information and belief, the Defendant is still in possession, custody, or control of the remaining 126 units of YumEarth Products.

133. Plaintiff's purchase of Heirloom Products was subject to the Defendant timely shipping the products to an Amazon fulfillment center in accordance with the terms of their agreement under PO 334.

134. At the 10/12/23 Meeting, the Defendant informed the Plaintiff that it put down a deposit with the manufacturer of the Heirloom Products and that it would know shortly whether the Heirloom Products could be procured and shipped.

135. At the 10/19/23 Meeting, the Plaintiff requested that the Defendant provide it with an update regarding the status of its ability to procure and ship the Heirloom Products.

136.    At the 10/19/23 Meeting, the Defendant informed the Plaintiff that it had no update to provide regarding the status of its ability to procure and ship the Heirloom Products.

137.    At the 10/19/23 Meeting, the Plaintiff requested a full cash refund for its purchase of the Heirloom Products because the Defendant failed to procure and ship the products in accordance with the terms of their agreement or provide it with an update on its ability to procure and ship the Heirloom Products.

138.    On October 20, 2023, the Defendant's Email informed the Plaintiff that it would shipping the Heirloom Products to the Plaintiff's Warehouse.

139.    The Plaintiff never received the Heirloom Products.

140.    Upon information and belief, the Defendant is still in possession, custody, or control of the Heirloom Products.

**F.    The 350 Purchase Order**

141.    On September 26, 2023, the Plaintiff placed another PO, which the Defendant accepted through its issuance of Invoice No. 0000350 (the "**350 PO**"), for the purchase of, *inter alia*, 2,000 units of 16.9 fluid ounces of Anua Heartleaf 77% Sooth Toner at $20.00 a unit for a total of $40,000.00 (the "**Anua Heartleaf Products**").  A copy of the 350 PO is attached hereto as **Exhibit J**.

142.    The total amount due from the Plaintiff to the Defendant for its purchase of all of the products listed in the 350 PO was $242,075.00.

143.    In consideration of credits in the amount of $242,075.00 issued to the Plaintiff by the Defendant arising from prior undelivered products it purchased, the total amount of cash due under the 350 PO to the Defendant was $0.00.

144.    Plaintiff's purchase of Heirloom Products was subject to the Defendant timely shipping the products to an Amazon fulfillment center in accordance with the terms of their agreement under PO 350.

145.    At the 10/12/23 Meeting, the Defendant informed the Plaintiff that it had encountered logistical issues and that the Heirloom Product would be shipped and arrive at an Amazon fulfillment center within the next twoweeks.

146.    At the 10/19/23 Meeting, the Defendant reiterated that shipment of Heirloom Products to an Amazon fulfillment center would occur within the time frame stated during the 10/12/23 Meeting.

147.    On October 20, 2023, the Defendant's Email informed the Plaintiff that it would be issuing it (i) a credit in the amount of $33,637.50 for the Heirloom Products; and (ii) the credit would be used by the Defendant for the shipping costs of all products purchased by the Plaintiff that were being held at the Defendant's storage facilities.

148.    The terms of the agreement between the Plaintiff and Defendant under PO 350 did not permit the Defendant to unilaterally issue the Plaintiff a refund in the form of a credit or apply the credit to shipping costs for other undelivered products being held at the Defendant's storage facilities.

149.    The Plaintiff never agreed to accept a refund in the form of credit for the Defendant's failure to procure and ship to an Amazon fulfillment center the Heirloom Products or for the Defendant to unilaterally apply the credit to shipping costs for other undelivered products it purchased that were being held at the Defendant's storage facilities.

150.    Upon information and belief, the Defendant is in possession, custody, or control of the Heirloom Products.

**III.    The Plaintiff 's Purchase of L-Methylfolate Supplements from the Defendant Not Authorized for Sale By the Manufacturer**

151.    On August 7, 2023, the Plaintiff purchased from the Defendant 200 units of 90 capsule bottles of Metabolic Maintenance L-Methyfolate 5 mg supplement at $33.00 a unit for a total of $6,600.00 (the "**Metabolic Products**"), as set forth in the 277 PO.

152.    Pursuant to the terms of their agreement under the 277 PO, the Defendant was required to procure authentic Metabolic Products authorized for sale on the Amazon platform and ship the products to an Amazon fulfillment center.

153.    The Defendant attempted to ship the Metabolic Products purchased by the Plaintiff and was informed that Amazon could not accept shipment of the products because there was no space left at its fulfillment center.

154.    After the Defendant was informed that Amazon would not accept shipment of the Metabolic Products because of the storage issue at the customer's Amazon store in whom the products were assigned, the Plaintiff agreed to accept shipment of the products at the Plaintiff's Warehouse during the 10/12/23 Meeting.

155.    After the 10/12/2023 Meeting, the Plaintiff received a letter, dated October 11, 2023, from Rosenbaum & Segall, P.C., on behalf of Metabolic Maintenance Products Inc. ("**Metabolic**"), of trademark infringement for the Metabolic Products purchased from the Defendant (the "**Trademark Infringement Notice**") and listed for sale on Amazon. A copy of Trademark Infringement Notice is attached hereto as **Exhibit K**.

156.    The Trademark Infringement Notice provided, in relevant part, that (i) the Metabolic Products purchased by the Plaintiff were not authorized for sale on Amazon by Metabolic; (ii) the listing of the Metabolic Products must be removed until it receives proof the

products purchased are authentic; and (iii) for the Plaintiff to provide it with documentation showing proof of product authenticity.

157.    Upon receipt of the Trademark Infringement Notice, the Plaintiff removed the Metabolic Products listed for sale on Amazon.

158.    On October 17, 2023, the Plaintiff forwarded a copy of the Trademark Infringement Notice to the Defendant and requested that the Defendant provide it with documents showing proof of product authenticity to resolve Metabolic's trademark infringement claim.

159.    On October 17, 2023, the Defendant informed the Plaintiff that it would look into the Trademark Infringement Notice.

160.    At the 10/19/23 Meeting, the Plaintiff requested that the Defendant provide it with documentation showing product authenticity for the Metabolic Products it purchased in accordance with the terms of their agreement or to issue it a full cash refund for the Metabolic Products.

161.    The Plaintiff never received authentic Metabolic Products that it purchased from the Defendant under PO 277.

162.    Upon information and belief, the Defendant is in possession, custody, or control of the Metabolic Products.

## IV.    The Plaintiff's Purchase of Casper and Dewalt Products from the Defendant

163.    On August 15, 2023, the Plaintiff entered into an agreement to purchase from the Defendant 400 units of a two-pack of Casper Original Pillows at $95.00 a unit for a total of $38,000.00 (the "**Casper Products**"), as set forth in the 298 PO.

164.    Pursuant to the terms of their agreement under the 298 PO, the Defendant was required to procure authentic brand Casper Products authorized for sale on the Amazon platform and ship the products to an Amazon fulfillment center.

165.    Prior to the Plaintiff's purchase of the Casper Products, the Plaintiff expressed to the Defendant that it would not purchase the Casper Products unless it was able to receive documentation necessary for Amazon to authorize the sale of these products on its platform (*e.g.*, Letters of Authorization, Product Invoices, and Registration Certificates).

166.    To induce the Plaintiff to purchase the Casper Products, the Defendant assured the Plaintiff that it would provide it with documentation necessary for Amazon to authorize the sale of the Casper Products on its platform.

167.    In reliance on Defendant's representations regarding its ability to provide it with documentation necessary for Amazon to authorize the sale of the Casper Products on its platform, the Plaintiff purchased these products from the Defendant.

168.    On September 18, 2023, the Defendant sent the Plaintiff pictures of the Casper Products it purchased and assured the Plaintiff that Amazon would authorize the sale of the product on its platform if it received copies of the pictures.

169.    On September 19, 2023, the Plaintiff informed the Defendant that Amazon would not accept pictures of the Casper Products unless it was also provided with the necessary authorization documentation (*e.g.*, Letters of Authorization, Product Invoices, and Registration Certificates).

170.    On September 19, 2023, the Defendant contacted the Plaintiff to inform it that the Casper Products were ready to be shipped to an Amazon fulfillment center.

171.    On September 19, 2023, the Plaintiff responded to the Defendant and refused to accept shipment of the Casper Products without the Defendant providing it with the documents needed for Amazon to authorize the sale of the products on its platform.

172.    On September 19, 2023, the Defendant responded to the Plaintiff to inform it that it was working on getting the Plaintiff the documentation necessary for Amazon to authorize the sale of the Casper Products on its platform.  A copy of the September 19, 2023 correspondence between the Plaintiff and Defendant is attached hereto as **Exhibit L**.

173.    On or about September 25, 2023, the Defendant provided the Plaintiff with a Authorization Letter, dated August 14, 2023 (the "**Casper Authorization Letter**"), issued by Catharine Morrison of Mattress Warehouse, Inc. that purported to provide the Plaintiff with authorization to sell the Casper Products on Amazon.  A copy of the Casper Authorization Letter is attached hereto as **Exhibit M**.

174.    After the Plaintiff reviewed the Casper Authorization Letter and submitted it to Amazon, the Plaintiff learned that the letter provided by the Defendant was inauthentic and the Casper Products were not authorized for sale on Amazon.

175.    On October 2, 2023 and continuing through and including October 3, 2023, the Plaintiff corresponded with the Defendant and requested a full cash refund for the Casper Products it purchased. A copy of the Plaintiff 's correspondence with the Defendant from October 2, 2023 through October 3, 2023 is attached hereto as **Exhibit N**.

176.    On October 6, 2023, the Defendant informed the Plaintiff that it would not be issuing it a full cash refund for the Casper Products.  A copy of the Defendant's October 6, 2023 correspondence with the Plaintiff is attached hereto as **Exhibit O**.

177.    After the Defendant informed the Plaintiff that it would not be issuing it a full cash refund for the Casper Products, the Defendant offered to (i) resell the Casper Products to another one of its customers and provide the Plaintiff with a full cash refund; or (ii) provide the Plaintiff with the documentation necessary for Amazon to authorize the sale of the products on its platform.

178.    At the 10/12/23 Meeting, the Plaintiff accepted the Defendant's offer to (i) resell the Casper Products to another one of its customers and provide the Plaintiff with a full cash refund; or (ii) provide the Plaintiff with the documentation necessary for Amazon to authorize the sale of the products on its platform.

179.    At the October 19, 2023 meeting, the Plaintiff and Defendant reiterated the agreement reached between them during the 10/12/23 Meeting to resolve the issues regarding the Casper Products.

180.    On October 20, 2023, the Defendant's Email repudiated the agreement reached between the Plaintiff and Defendant in the 10/12/23 meeting and informed the Plaintiff that it would be shipping the Casper Products to the Plaintiff's Warehouse.

181.    The Plaintiff never received the Casper Products it purchased from the Defendant in accordance with the terms of their agreement.

182.    Upon information and belief, the Defendant is still in possession, custody, or control of the Casper Products.

183.    On September 26, 2023, the Plaintiff entered into an agreement to purchase from the Defendant 1,500 units of Dewalt 20V Mx Cordless Hedge Trimmer at $85.00 a unit for a total of $127,500.00 (the "**Dewalt Products**"), as set forth in the 350 PO.

184.    Pursuant to the terms of their agreement under the 350 PO, the Defendant was required to procure authentic Dewalt Products authorized for sale on the Amazon platform and ship the products to an Amazon fulfillment center.

185.    Prior to the Plaintiff's purchase of the Dewalt Products, the Plaintiff expressed to the Defendant that it would not purchase the Dewalt Products unless it was able to receive

documentation necessary for Amazon to authorize the sale of these products on its platform (*e.g.*, Letters of Authorization, Product Invoices, and Registration Certificates).

186.    To induce the Plaintiff to purchase the Dewalt Products, the Defendant assured the Plaintiff that it would provide it with documentation necessary for Amazon to authorize the sale of the Dewalt Products on its platform.

187.    In reliance on Defendant's representations regarding its ability to provide it with documentation necessary for Amazon to authorize the sale of the Dewalt Products on its platform, the Plaintiff purchased these products from the Defendant.

188.    On September 27, 2023 and continuing until September 28, 2023, the Plaintiff corresponded with the Defendant and requested the Defendant provide it with the documentation necessary for Amazon to authorize the sale of the Dewalt Products on its platform. A copy of the Plaintiff's correspondence with the Defendant from September 27, 2023 through September 28, 2023 is attached hereto as **Exhibit P**.

189.    On September 28, 2023, the Defendant provided the Plaintiff with an Authorization Letter (the "**Dewalt Authorization Letter**") issued by Calin Moldovan from Ace Hardware Corporation that purported to provide the Plaintiff with authorization to sell the Dewalt Products on Amazon.  A copy of the Dewalt Authorization Letter is attached hereto as **Exhibit Q**.

190.    After the Plaintiff reviewed the Dewalt Authorization Letter and submitted it to Amazon, the Plaintiff learned that the letter provided by the Defendant was inauthentic and the Dewalt Products were not authorized for sale on Amazon.

191.    On October 2, 2023 and continuing through October 3, 2023, the Plaintiff corresponded with the Defendant and requested a full cash refund for the Dewalt Products it purchased.

192.    On October 2, 2023 and continuing through October 3, 2023, the Defendant responded to the Plaintiff's request for a full cash refund for the Dewalt Products and agreed to provide the Plaintiff with a full cash refund for the Dewalt Products it purchased.  A copy of the Plaintiff's correspondence with the Defendant from October 2, 2023 through October 3, 2023 is attached hereto as **Exhibit R**.

193.    On October 6, 2023, the Defendant informed the Plaintiff that it would not be issuing it a full cash refund for 650 units of the Dewalt Products.  A copy of the Defendant's October 6, 2023 correspondence with the Plaintiff is attached hereto as **Exhibit S**.

194.    After the Defendant informed the Plaintiff that it would not be issuing it a full cash refund for 650 units of the Dewalt Products, the Defendant offered to (i) provide the Plaintiff a credit of $22,500.00 for 250 units of the Dewalt Products; and (ii) ship the remaining 400 units of the Dewalt Products to the Plaintiff 's Warehouse during the 10/12/23 Meeting.

195.    At the 10/12/23 Meeting, the Defendant did not accept the Defendant's offer to (i) provide the Plaintiff only a credit of $22,500.00 for 250 units of the Dewalt Products; and (ii) ship the remaining 400 units of the Dewalt Products to the Plaintiff 's Warehouse during the 10/12/23 Meeting.

196.    At the 10/19/23 Meeting, the Defendant and Plaintiff continued their discussions in an attempt to resolve the issues regarding the 650 units of the Dewalt Products purchased by the Plaintiff.

197.    On October 20, 2023, the Defendant's Email informed the Plaintiff that it would be (i) issuing the Plaintiff a credit in the amount of $22,500.00 for 250 units of the Dewalt Products it purchased; and (ii) shipping the remaining 400 units of the Dewalt Products to the Plaintiff's Warehouse.

198.    The terms of the agreement between the Plaintiff and Defendant under PO 350 did not permit the Defendant to unilaterally issue the Plaintiff a refund in the form of a credit.

199.    The Plaintiff never agreed to accept a refund in the form of a credit for 250 units of the Dewalt Products for the Defendant's failure to provide it with documents necessary for Amazon to authorize the sale of the Dewalt Products on its platform.

200.    The Plaintiff never received the 400 units of the Dewalt Products it purchased from the Defendant.

201.    Upon information and belief, the Defendant is still in possession, custody, or control of 650 units of the Dewalt Products

## COUNT I
### (Turnover of Estate Property—11 U.S.C. § 542)

202.    The allegations contained in paragraphs 1–201 are restated in their entirety.

203.    Upon the filing of voluntary petition for relief under the Bankruptcy Code, an estate is created consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(2).

204.    Plaintiff, as the Debtor in the Chapter 11 Case, has an estate that includes the 277 PO, 278 PO, 283 PO, 297 PO, 298 PO, 308 PO, 314 PO, 334 PO, and 350 PO and any rights thereunder.

205.    Upon payment of the amounts due for the products listed in 277 PO, 278 PO, 283 PO, 297 PO, 298 PO, 308 PO, 314 PO, 334 PO, and 350 PO, as described in paragraphs 17–201 (collectively, the "**Products**"), the Defendant was required to ship the Products.

206.    The Products purchased by the Plaintiff are estate property and subject to turnover by the Defendant, pursuant to Section 542 of the Bankruptcy Code.

207.    Upon information and belief, the Defendant is in possession, custody, and control of the Products.

208.    The Products have significant value approximately worth over $800,000.00 and is property that Plaintiff may use, sell, or lease, pursuant to Section 363 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff seeks entry of a final judgment from the Bankruptcy Court (i) directing the Defendant to turn over the Products purchased by the Plaintiff; or, alternatively, (ii) determining the value of the products, along with lost profits resulting from the failure to deliver the products; and (ii) granting the Plaintiff such other and further relief, at law or in equity, that is just and proper under the circumstances.

**Dated: February 20, 2024**

                              **HOUSTON RODERMAN**
                              *Counsel for Plaintiff*
                              633 S. Andrews Avenue, Suite 500
                              Fort Lauderdale, FL 33301
                              Telephone: (954) 900-2615
                              Facsimile: (954) 839-9068
                              bhouston@thehoustonfirm.com
                              dschena@thehoustonfirm.com


                    By:     /s/ Bart A. Houston
                            Bart A. Houston, Esq.
                            Florida Bar No. 623636

## Exhibit A

**Defendant's Email**

LEAGUE OF ECOM FOLLOW UP EMAIL SENT TO VANTAGE ECOM ON Fri, Oct 20, 1:08 PM;

"Hello,

In our meeting yesterday we were told we would receive proof the Casper product was ordered directly from Mattress Firm and the LOA which we were provided would match supply chain documents for the product. We still have not received the proof of supplier communications or supporting supply chain documents.

If we do not receive proof the product was from the vendor stated on the LOA we were provided by EOB EST today, we are requesting a full refund for this product be added to the full refund of the Dewalt product which will be initiated by Monday October 23rd for the following reasons:

1) LOA's we were provided are not the suppliers where the products were purchased from.

2) We were not told the suppliers who you did purchase the products from were not willing or able to write an authentic LOA.

Please advise on the Casper supply chain documents / proof of purchase from Mattress Firm."

***Although this email states mattress firm, it was actually supposed to say "Mattress Warehouse"*

BELOW IS VANTAGE RESPONSE TO THIS EMAIL:

"

Hey League of ecom,

As of now we have a credit amount totaling [$58,275] through "Vendor 1" for the Mueller product. Vendor is taking a 10% fee for the order cancellation and will only issue credit.  We will send you a list for this Vendor under the name "Vendor 1 List"

"Vendor 1": Terms & Conditions

        "All credit needs to be used within thirty days [30] or credit will expire. We will send lists to you every day in the exception of the weekends and holidays, to ensure you have visibility to our products."

Vantage Ecom, agrees to be sending these lists from "Vendor 1" to League of Ecom daily to ensure that they have visibility of "Vendor 1" products.

Per our terms of service, we will not be refunding cash to you for the [$22,500] of Dewalt but will be issuing you credit. LOE stated on the phone that they wanted a letter of authenticity due to the fact that they wanted to show it to their clients not for Amazon Approval (Ungating). The remaining units (400) of dewalt will be sent to your San Jose warehouse located at: **205 E**

**Alma Ave, Unit E4, San Jose, CA 95112.** In addition to this credit, you have a credit of [$22,500] through vendor 2 for the Dewalt product. We will send you a list for this Vendor under the name"Vendor 2 List" [Insert list]

Lastly, there is a credit for [$33,637.50] with Vantage Ecom for the Heirloom product which was unable to be fulfilled by the manufacturer. This credit will be held and used for the shipping cost of all current units in our facilities. Please review shipping policy.

With that said, your current balance for storage fees is [$7,892.00] for the month of october.

For the products currently sitting in our facilities, they will be shipped to your San Jose warehouse and all the shipping and storage costs will be deducted from the available credit on your account from the Heirloom product. Please review shipping policy.

These products are as followed:

1. Pentel R.S.V.P. Ballpoint Pen, Medium Line, Assorted Ink, 6 Pack (BK91BP6M)
2. Beauty of Joseon Serum Line (Hanbang Serum Discovery Kit)
3. COXIR Ultra Hyaluronic Cleansing Oil |No Paraben, No Silicon, No Animal Testing, No Mineral oil | K-beauty, Korean Skin Care| Make-up remover, Blackhead off
4. Bobbi Brown Vitamin Enriched Face Base - 50ml/1.7oz
5. YumEarth Organic Mini Candy Canes, 30 Canes Per Pack - Allergy Friendly, Non GMO, Gluten Free, Vegan
6. Anua Heartleaf 77% Soothing Toner I pH 5.5 Skin Trouble Care, Calming Skin, Refreshing, Purifying (500ml / 16.9 fl.oz.
7. Casper Original Pillow for Sleeping, King, White, Two Pack
8. Arm & Hammer Fruit & Vegetable Wash, Produce Wash, Produce Cleaner, Pack of 3, 16 oz. Bottles, 1 Trigger (Packaging May Vary)
9. Mederma Advanced Scar Gel, Treats Old and New Scars, Reduces the Appearance of Scars from Acne, Stitches, Burns and More, 0.70oz (20g)
10. DEWALT 20V* MAX Cordless Hedge Trimmer, 22 Inches, Tool Only (DCHT820B)

We will be sending BOL's via email when they are being shipped.

Regarding casper, we reject requesting a full refund for this product. Product is being shipped to your San Jose Warehouse located at: **205 E Alma Ave, Unit E4, San Jose, CA 95112.** See attached BOL as well as our refund policy for questions regarding your refund request.

Orders that will be sent to you via email are as followed:

1. Charlotte Tilbury Airbrush Flawless Setting Spray (100ml / 3.5 Fl Ozl),Clear
2. Cheese Board - 2 Ceramic Bowls 2 Serving Plates. Magnetic 4 Drawers Bamboo Charcuterie Cutlery Knife Set, Round Tray, 2 Forks, Wine Opener, Labels, Markers, Gift for Birthdays, Weddings, Housewarming

3. FINER FORM Multi-Functional Adjustable Weight Bench for Total Body Workout – Hyper Back Extension, Roman Chair, Ab Sit up Bench, Decline Bench, Flat Bench. Great Equipment
4. DACORM Massage Gun, Percussion Muscle Massage Gun for Athletes, Handheld Deep Tissue Massager, Super Quiet Portable Electric Sport Massager of Y8 Pro Max. (Carbon-15 Heads)
5. First Aid Beauty Ultra Repair Cream Intense Hydration Moisturizer for Face and Body – Rich Whipped Texture For Immediate Skin Hydration, 6 oz
6. First Aid Beauty Firming Cream with Peptides, Niacinamide + Collagen – Day & Night Anti-Aging Face Moisturizer – 1.7 fl oz

Due to these issues we will be closing your account with Vantage E-commerce for any future purchases aside from the open credit amounts. The current state of our business relationship has been tampered with due to the lack of communication, negligence of product fulfillment issues, and providing adequate information in a timely manner for us to fulfill our duties.

Moving forward, we will only be communicating via email. This includes product lists, general communication, order fulfillment updates, etc.

Links below to Vantage Policies:

Refund Policy

Terms Of Service

Shipping Policy

Best,

Vantage Ecom DBA TRBW

--

**Vantage Ecom**

**DBA TRBW, LLC**

(203) 769-9910

Logistics@vantageecom.com

"

## Exhibit B

**277 PO**



Vantage Ecommerce
Miami, FL

**Billed To**
Jay
League of Ecom

**Date of Issue**
08/07/2023

**Due Date**
09/06/2023

**Invoice Number**
0000277

**Amount Due (USD)**
# $31,186.00

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| B0083UXH22<br>Metabolic Maintenance L-Methylfolate 5mg - Gluten Free & Dairy Free Folate Supplement - Supports Cognitive + Brain Health - L Methylfolate for Daily Use (90 Capsules) | $33.00 | 200 | $6,600.00 |
| B000QVDMI0<br>Detoxify Mega Clean Herbal Cleanse – Tropical – 32 oz – Professionally Formulated Herbal Detox Drink – Enhanced with Milk Thistle, Ginseng Root & Guarana Seed – Plus Sticker | $18.25 | 400 | $7,300.00 |
| B08YP2Z5BG<br>Ticonderoga My First Wood-Cased Pencils , #2 HB Soft, Without Eraser, Yellow, 36 Count | $16.00 | 600 | $9,600.00 |
| B086SD51JD<br>Jungle Gym Kingdom Tree Swing for Kids - Single Disc Seat and Rainbow Climbing Rope Set w/Carabiner and 4 Foot Strap - Treehouse and Outdoor Playground Accessories - Blue | $15.25 | 504 | $7,686.00 |

| | |
|---|---|
| Subtotal | 31,186.00 |
| Tax | 0.00 |
| Total | 31,186.00 |
| Amount Paid | 0.00 |
| Amount Due (USD) | $31,186.00 |

Notes

Account Number - 898136420601
Routing Number - 026009593

**<u>Exhibit C</u>**

**278 PO**



Vantage Ecommerce
Miami, FL

**Billed To**
Jay
League of Ecom

**Date of Issue**
08/08/2023

**Due Date**
09/07/2023

**Invoice Number**
0000278

**Amount Due (USD)**
$112,110.00

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| B0065I0UMO<br>First Aid Beauty Ultra Repair Cream Intense Hydration Moisturizer for Face and Body – Rich Whipped Texture For Immediate Skin Hydration, 6 oz | $24.00 | 850 | $20,400.00 |
| B00802FYYW<br>Isagenix IsaLean Shake - Complete Superfood Meal Replacement Drink Mix for Maintaining Healthy Weight and Lean Muscle Growth - 854 Grams - 14 Meal Canister (Creamy Dutch Chocolate Flavor) | $43.00 | 350 | $15,050.00 |
| B0193YG8GI<br>Jungle Gym Kingdom Swing Sets for Backyard, Monkey Bars & Swingset Accessories - Set Includes 18" Trapeze Swing Bar & 48" Heavy Duty Chain with Locking Carabiners - Outdoor Play Equipment (Green) | $16.00 | 1000 | $16,000.00 |
| B08RF28Z9C<br>Jungle Gym Kingdom Swing for Outdoor Swing Set - Pack of 1 Swing Seat Replacement Kit with Heavy Duty Chains - Backyard Swingset Playground Accessories for Kids (Blue) | $17.00 | 900 | $15,300.00 |
| B00BCS1670<br>Isagenix IsaLean Shake - Complete Superfood Meal Replacement Drink Mix for Maintaining Healthy Weight and Lean Muscle Growth - 826 Grams - 14 Meal Canister (Creamy French Vanilla Flavor) | $42.00 | 1080 | $45,360.00 |

| | | |
|---|---|---|
| Subtotal | 112,110.00 |
| Tax | 0.00 |
| Total | 112,110.00 |

112,110.00
Amount Paid                    0.00

Amount Due (USD)        $112,110.00

Notes
WIRE INFO:

Account Number - 898136420601
Routing Number - 026009593

**<u>Exhibit D</u>**

**283 PO**



Vantage Ecommerce
Miami, FL

**Billed To**
Jay
League of Ecom

**Date of Issue**
08/10/2023

**Due Date**
09/09/2023

**Invoice Number**
0000283

**Amount Due (USD)**
# $117,000.00

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| B071RN68MR<br>Carlson - Key-E Suppositories, 30 IU Vitamin E Suppository, Lubricates Dry Areas, Treatment for Women and Men, Vaginal & Rectal, 24 Count | $7.50 | 1200 | $9,000.00 |
| B01360EO8E<br>Makita XDT11R 18V Compact Lithium-Ion Cordless Impact Driver Kit, Teal, | $180.00 | 90 | $16,200.00 |
| B077S6KQ88<br>PurSteam Steam Mop Cleaner 10-in-1 with Convenient Detachable Handheld Unit, Laminate/Hardwood/Tiles/Carpet Kitchen - Garment - Clothes - Pet Friendly Steamer Whole House Multipurpose Use | $35.00 | 800 | $28,000.00 |
| B00D5399N8<br>GE Light Bulbs, General Purpose Light Bulbs, 43 Watts, Halogen, Soft White, Medium Base (12 Pack)" | $8.00 | 1500 | $12,000.00 |
| B0877WJHN7<br>Thorne Women's Multi 50+ - Daily Multivitamin Without Iron and Copper for Women - Comprehensive, Foundational Support - Bone and Immune System Health - Gluten-Free - 180 Capsules - 30 Servings | $31.00 | 700 | $21,700.00 |
| B000E148DK<br>Xyron Repositionable Adhesive Refill for Creative Station, 9" x 40', Refill-Cartridge for Label Maker, Laminator Machine, Scrapbooking Supplies, Home Office & Home School Craft Supplies (AT906-40) | $42.00 | 500 | $21,000.00 |
| B00006IEAR<br>Pentel R.S.V.P. Ballpoint Pen, Medium Line, Assorted Ink, 6 Pack (BK91BP6M) | $7.00 | 1300 | $9,100.00 |

|  | | |
|---|---:|---:|
| Subtotal | | 117,000.00 |
| Tax | | 0.00 |
| Total | | 117,000.00 |
| Amount Paid | | 0.00 |
| Amount Due (USD) | | $117,000.00 |

**Notes**

WIRE INFO:

Account Number - 898136420601
Routing Number - 026009593

TRBW LLC
60 SW Street, Miami, Florida 33130

**<u>Exhibit E</u>**

**297 PO**

|  | Subtotal | 140,790.00 |
|---|---|---|
|  | Tax | 0.00 |
|  | Total | 140,790.00 |
|  | Amount Paid | 116,480.75 |
|  | Amount Due (USD) | $24,309.25 |

## Exhibit F

**298 PO**



Vantage Ecommerce
Miami, FL

**Billed To**
Jay
League of Ecom

**Date of Issue**
08/15/2023

**Due Date**
09/14/2023

**Invoice Number**
0000298

**Amount Due (USD)**
# $70,861.00

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| B07NQDCJLM<br>Arm & Hammer Fruit & Vegetable Wash, Produce Wash, Produce Cleaner, Pack of 3, 16 oz. Bottles, 1 Trigger (Packaging May Vary) | $17.00 | 1933 | $32,861.00 |
| B08NWHFKNJ<br>Casper Original Pillow for Sleeping, King, White, Two Pack | $95.00 | 400 | $38,000.00 |

| | |
|---|---|
| Subtotal | 70,861.00 |
| Tax | 0.00 |
| Total | 70,861.00 |
| Amount Paid | 0.00 |
| Amount Due (USD) | $70,861.00 |

**Notes**
WIRE INFO:

Account Number - 898136420601
Routing Number - 026009593

TRBW LLC
60 SW Street, Miami, Florida 33130

**<u>Exhibit G</u>**

**308 PO**



Vantage Ecommerce
Miami, FL

**Billed To**
Jay
League of Ecom

**Date of Issue**
08/25/2023

**Due Date**
09/24/2023

**Invoice Number**
0000308

**Amount Due (USD)**
# $151,475.00

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| **B001FXU9GQ**<br>MRM Nutrition Egg White Protein \| Chocolate Flavored \| 23g Fat-Free Protein \| with Digestive enzymes \| Highest Biological Value \| Clinically Tested \| 20 Servings | $28.00 | 1000 | $28,000.00 |
| **B000N8M3PE**<br>MRM Nutrition Whey Protein \| Vanilla Flavored \|18g Protein \| with 2 Billion probiotics + Digestive enzymes + BCAAs \| High Absorption + Digestion \| Hormone + antibiotic Free \| 33 Servings | $18.50 | 750 | $13,875.00 |
| **B000K78Z32**<br>MRM Nutrition Whey Protein \| Chocolate Flavored \|18g Protein \| with 2 Billion probiotics + Digestive enzymes + BCAAs \| High Absorption + Digestion \| Hormone + antibiotic Free \| 33 Servings | $18.00 | 750 | $13,500.00 |
| **B000QVDMI0**<br>Detoxify Mega Clean Herbal Cleanse – Tropical – 32 oz – Professionally Formulated Herbal Detox Drink – Enhanced with Milk Thistle, Ginseng Root & Guarana Seed – Plus Sticker | $19.00 | 800 | $15,200.00 |
| **B0B3GK7HCC**<br>Mueller Austria Premium Espresso Machine Coffee Maker with Milk Frother, Grinder, 15 Bar, Stainless Steel, Standard and Bottomless Portafilter, Multiple Filters, Temp Control, Silver | $185.00 | 350 | $64,750.00 |
| **B08T1QL1F6**<br>First Aid Beauty Firming Cream with Peptides, Niacinamide + Collagen – Day & Night Anti-Aging Face Moisturizer – 1.7 fl oz | $19.00 | 850 | $16,150.00 |

**<u>Exhibit H</u>**

**314 PO**



Vantage Ecommerce
Miami, FL

**Billed To**
Jay
League of Ecom

**Date of Issue**
08/31/2023

**Due Date**
09/30/2023

**Invoice Number**
0000314

**Amount Due (USD)**
$67,250.00

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| B08SS4T6ZT<br>Mederma Advanced Scar Gel, Treats Old and New Scars, Reduces the Appearance of Scars from Acne, Stitches, Burns and More, 0.70oz (20g) | $7.25 | 5000 | $36,250.00 |
| B0B348PSL7<br>Beauty of Joseon Serum Line (Hanbang Serum Discovery Kit) | $15.50 | 2000 | $31,000.00 |
| B07PCTBWZT<br>COXIR Ultra Hyaluronic Cleansing Oil \|No Paraben, No Silicon, No Animal Testing, No Mineral oil \| K-beauty, Korean Skin Care\| Make-up remover, Blackhead off | $9.00 | 900 | $8,100.00 |
| B0BWXM3RRK<br>Soundcore Motion X600 Portable Bluetooth Speaker with Wireless Hi-Res Spatial Audio,50W Sound, IPX7 Waterproof, 12H Long Playtime, Pro EQ, Built-in Handle, AUX-in | $125.00 | 300 | $37,500.00 |

| | |
|---|---|
| Subtotal | 112,850.00 |
| Tax | 0.00 |
| Total | 112,850.00 |
| Amount Paid | 45,600.00 |
| Amount Due (USD) | $67,250.00 |

Notes

WIRE INFO:

Account Number - 898136420601
Routing Number - 026009593

TRBW LLC
60 SW Street, Miami, Florida 33130

**<u>Exhibit I</u>**

**334 PO**



Vantage Ecommerce
3057100319
Miami, FL

| Billed To | Date of Issue | Invoice Number | Amount Due (USD) |
|---|---|---|---|
| Jay | 09/18/2023 | 0000334 | **$0.00** |
| League of Ecom | | | |
| | Due Date | | |
| | 10/18/2023 | | |

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| B08FF44TTY<br>Charlotte Tilbury Airbrush Flawless Setting Spray (100ml / 3.5 Fl Ozl),Clear | $25.50 | 1500 | $38,250.00 |
| B07YMMK73J<br>YumEarth Organic Mini Candy Canes, 30 Canes Per Pack - Allergy Friendly, Non GMO, Gluten Free, Vegan | $14.00 | 750 | $10,500.00 |
| B0BVGWN7X1<br>Harvest Elite Slim SS with Heirloom Salad Kit | $58.50 | 575 | $33,637.50 |
| B078X12B3V<br>Cheese Board - 2 Ceramic Bowls 2 Serving Plates. Magnetic 4 Drawers Bamboo Charcuterie Cutlery Knife Set, Round Tray, 2 Forks, Wine Opener, Labels, Markers, Gift for Birthdays, Weddings, Housewarming | $33.00 | 750 | $24,750.00 |
| Prep<br>B07YMMK73J<br>B0BVGWN7X1 | $1.00 | 1325 | $1,325.00 |

| | | |
|---|---|---|
| Subtotal | | 108,462.50 |
| Tax | | 0.00 |
| Total | | 108,462.50 |
| Amount Paid | | 108,462.50 |

Amount Due (USD)                               $0.00

Notes
WIRE INFO:

Account Number - 898136420601
Routing Number - 026009593

TRBW LLC
60 SW Street, Miami, Florida 33130

**<u>Exhibit J</u>**

**350 PO**



Vantage Ecommerce
3057100319
Miami, FL

| Billed To | Date of Issue | Invoice Number | Amount Due (USD) |
|---|---|---|---|
| Jay | 09/26/2023 | 0000350 | **$0.00** |
| League of Ecom | | | |
| | Due Date | | |
| | 10/26/2023 | | |

| Description | Rate | Qty | Line Total |
|---|---|---|---|
| B0C24G73BR<br>DACORM Massage Gun, Percussion Muscle Massage Gun for Athletes, Handheld Deep Tissue Massager, Super Quiet Portable Electric Sport Massager of Y8 Pro Max. (Carbon-15 Heads) | $34.00 | 1000 | $34,000.00 |
| B01BSURQXO<br>DEWALT 20V* MAX Cordless Hedge Trimmer, 22 Inches, Tool Only (DCHT820B) | $85.00 | 1500 | $127,500.00 |
| B07GYXF65S<br>FINER FORM Multi-Functional Adjustable Weight Bench for Total Body Workout – Hyper Back Extension, Roman Chair, Ab Sit up Bench, Decline Bench, Flat Bench. Great Equipment | $100.00 | 400 | $40,000.00 |
| B08CMYJK57<br>Anua Heartleaf 77% Soothing Toner I pH 5.5 Skin Trouble Care, Calming Skin, Refreshing, Purifying (500ml / 16.9 fl.oz. | $20.00 | 2000 | $40,000.00 |
| Casper LOA / INVOICE | $575.00 | 1 | $575.00 |

| | | |
|---|---|---|
| Subtotal | | 242,075.00 |
| Tax | | 0.00 |
| Total | | 242,075.00 |
| Amount Paid | | 242,075.00 |
| **Amount Due (USD)** | | **$0.00** |

WIRE INFO:

Account Number - 898136420601
Routing Number - 026009593

TRBW LLC
60 SW Street, APT 2824, Miami, Florida 33130

## Exhibit K

**Trademark Infringement Notice**

Rosenbaum, Famularo & Segall, P.C.
780 Long Beach Boulevard
Long Beach NY 11561

AC6504761 1 1-3

**USPS CERTIFIED MAIL**

9207 1901 4298 0489 6917 22

0008558761000011
MGK3 Enterprise LLC MGK3 Enterprise LLC
S71W17665 Lake Dr
Muskego WI 53150



## Rosenbaum & Segall, P.C.
BrandProtectionAmazon.com

780 Long Beach Blvd., Long Beach, NY 11561
Phone: 212-256-8499
BrandProtection@BPAmazon.com
www.BrandProtectionAmazon.com

October 11, 2023

**VIA CERTIFIED MAIL**

**Re:**            **Notice of Infringement – Request to Cease Sales of Metabolic Products**
**Our Client:  Front Row**

To Whom It May Concern:

Our firm has been retained by Front Row and has been appointed as the registered agent for the enforcement of the Metabolic brand's intellectual property rights on the Amazon.com platform. We are writing to you in hopes of coming to an amicable resolution regarding a matter our firm has flagged in connection with your Amazon Seller account. It has come to our attention that your storefront on the Amazon platform, www.Amazon.com ("Amazon") has been selling products bearing the Metabolic trademark without authorization. This activity amounts to trademark infringement and our client considers this an urgent matter. However, currently, we only seek your cooperation in reaching a mutually beneficial resolution. Please ensure to promptly reply to this correspondence to avoid further escalation of this dispute.

While our client is flattered by your interest in and enthusiasm for the Metabolic brand, it is of the utmost importance to ensure that only authentic Metabolic brand products are sold on Amazon and the Metabolic trademark is used properly. Our client must work diligently to protect this brand, its trademark(s), and its reputation per contractual requirements.

First and foremost, we would like to verify that you are offering authentic Metabolic products for resale. We have been unable to verify the chain of custody for the Metabolic items listed by your Amazon Storefront and kindly request you provide documentation evidencing the authenticity and source of these items.

Second, we and our client were unable to locate a reseller agreement that pertains to the Metabolic guarantee / warranty policy and quality controls of Metabolic goods, in addition to other factors. Our client takes additional steps, preparing, packaging, and shipping their products to Amazon customers to ensure their strict quality controls are upheld up to and until their products reach the hands of consumers.  It is for these reasons that our client only provides certain post sale benefits for their products with valid proof of purchase from our

CamScanner



**Rosenbaum & Segall, P.C.**
BrandProtectionAmazon.com

780 Long Beach Blvd., Long Beach, NY
11561
**Phone:** 212-256-8499
BrandProtection@BPAmazon.com
www.BrandProtectionAmazon.com

client or an authorized seller on Amazon.com. Each and every unauthorized use of the Metabolic trademark causes consumer confusion and amounts to infringement. Even if your products are authentic, they are "materially different" from the listing details and may not be sold on Amazon for at least the reasons stated above.

We must therefore take certain actions to resolve such instances of unauthorized use of the Metabolic trademark and limit the use of the trademark by others. Unauthorized use of intellectual property has the potential to result in legal actions that our client seeks to avoid with mutual cooperation. Our client does not want to resort to such serious actions and wishes to resolve this matter with you efficiently and professionally.

Based on the foregoing, we ask that you respond to this letter, including confirmation of listing removal and proof of product authenticity within two business days.

If we do not receive a timely response and you continue to unlawfully offer Metabolic products for sale, we will be forced to escalate this matter further, including – but not limited to – filing a report of intellectual property (trademark) infringement directly with Amazon and / or initiating formal legal action.

Again, our client wishes to resolve this matter amicably and efficiently. All we ask is you agree to refrain from selling Metabolic products on Amazon. We must be contacted at BrandProtection@BPAmazon.com We look forward to your response.

Thank you,
/Robert Segall/
Robert Segall, Esq.
Rosenbaum & Segall, P.C.

CamScanner

**<u>Exhibit L</u>**

**Casper Correspondence**
**(9/19/23)**

[9/19/23, 8:45:22 AM] Rachel: <attached: 00000849-PHOTO-2023-09-19-08-45-22.jpg>

[9/19/23, 8:57:30 AM] Javon: Amazing

[9/19/23, 8:57:44 AM] Javon: They're ready to ship , should we get that scheduled today?

[9/19/23, 9:27:36 AM] Rachel: For the Casper I still need: documentary evidence stating the listing complied with policy on the date of enforcement (e.g., Letter of Authorization, product invoice, Registration certificate).

[9/19/23, 9:38:22 AM] Jay Kambo: @13057100319 we looked at this starlink listing and it's a different one than the original. The original starlink listing is gone and this one only gets 30 sales a month with 2 sellers already on it. There are actually about 7 different listings of the same product now, all with pretty low sales.


Can we just add this starlink to the credit and apply it towards more deals? It doesn't make sense to purchase $400,000+ of the product that sells only 30 units a month. Even if we run PPC, it'll eat too far into the margins.


Also for the Casper, we can't submit any photos without the documentation as well. Can you please provide those documents for us to submit?

[9/19/23, 9:59:23 AM] Javon: I understand , we can add them to the credit NP.


For the casper we're working on documentation will get what we can sent over asap

[9/19/23, 9:59:49 AM] Javon: @15209541873 are you able to check the emails from logistics, there's a

## __Exhibit M__

**Casper Authorization Letter**

# MATTRESS Warehouse℠

08/14/2023

**Mattress Warehouse**
Mattress Warehouse, Inc.

7315 Grove Rd
Frederick, MD 21704, USA

## AUTHORIZATION LETTER

TO WHOM IT MAY CONCERN

We, the undersigned, hereby authorize **Josh Lambert / Empire Lowcountry Holdings LLC** located at **406 Hutty Street, Daniel Island, SC 29492 , USA** to act on our behalf in all manners relating to to supply, promote, distribute, sell, exhibit, negotiate and hold responsibility for after- sale services for below mentioned product worldwide.

- **Casper Original Pillow for Sleeping, King, White, Two Pack**
  Item #: 951-000172-002

We recognize that we are still responsible for the terms and conditions outlined in Retailer Services Agreement.

This authorization is valid until further written notice from the applicant.
Sincerely,

*Catharine F Morrison*

| | |
|---|---|
| Name: | Catharine Morrison |
| Title: | Program Manager |
| Company Name: | Mattress Warehouse, Inc. |
| Address: | 7315 Grove Rd |
| | Frederick, MD 21704, USA |
| E-Mail: | catharine@mattresswarehouse.com |

## Exhibit N

**Casper Correspondence**
**(10/2/23–10/3/23)**

[10/2/23, 12:59:14 PM] Jay Kambo: What's up,

Rachel is currently training the VA on how to do the analytics sheets on our side so they will be added in soon.

I met with the team today and it looks like dewalt isn't getting ungated on the account we want it to go to. Same thing with Casper.

We've had to refund those clients for those products and we are out a bit of cash right now with the starlink situation as well. Instead of credit, can we get a refund for the credit amount? We are still placing orders, we just need the cash to continue into Q4. I believe the current credit is $87,000. With Dewalt at $127,000 and Casper at $38,000 the total is $252,000.

Aside from the credit, we ordered 800 units of the swing sets and only about 200 or so were shipped into Amazon. The ASIN that was shipped is also the wrong ASIN and if we are to take that ASIN out of amazon and ship it back under the correct ASIN, it would be a negative ROI. Can we do something about the missing units and return the products to the distributor since they shipped out the wrong product?

[10/2/23, 1:50:50 PM] Javon: Hey we can definitely refund the original credit amount we'll have that wire sent today the total is $83,787

For the Casper and dewalt, we're going to have to work on getting refunds from those vendors and will likely get hit with a 5% fee in order to cancel those orders - the same thing happened with starlink we got charged 5% of the purchase order to cancel it. We will keep you posted on that this week and get you the money back as it comes in from these suppliers

[10/2/23, 1:50:55 PM] Javon: Can you send over your wire info

[10/2/23, 1:51:23 PM] Javon: As for the last item , I'm going to see if the vendor can take those back as well

[10/2/23, 1:52:19 PM] Jay Kambo: Got it. That makes sense and I appreciate the accommodation

[10/2/23, 1:53:18 PM] Javon: Of course we'll get this worked out for you guys

[10/2/23, 1:54:06 PM] Javon: We have more products to send you guys today but we don't want to bombard , let us know after you're able to check out those original 15 we put up since they're HOT

[10/2/23, 1:56:43 PM] Jay Kambo: CHASE BANK

02100001

965517862

[10/2/23, 1:57:10 PM] Jay Kambo: <attached: 00000129-PHOTO-2023-10-02-13-57-09.jpg>

[10/2/23, 1:57:13 PM] Jay Kambo: <attached: 00000130-PHOTO-2023-10-02-13-57-13.jpg>

[10/2/23, 1:57:31 PM] Jay Kambo: Top image is routing number for wires

[10/2/23, 2:03:23 PM] Javon: Got it is the address the CA address?

[10/2/23, 2:03:42 PM] Javon: And league of ecom or urban empire for company name

[10/2/23, 2:06:52 PM] Jay Kambo: 7862 Account Verification letter Urban.pdf • 1 page document omitted

[10/2/23, 2:07:02 PM] Jay Kambo: This should have all the info you need

[10/2/23, 2:41:31 PM] Javon: <attached: 00000136-PHOTO-2023-10-02-14-41-31.jpg>

[10/2/23, 3:50:09 PM] Javon: Hey so we got refund processing for 850 of the dewalts. The other 650 are ready to ship so they aren't giving us refund on that - my compliance guy is confident we can get that account cleared to sell them if you let us handle it to move those 650 units

[10/2/23, 3:50:14 PM] Javon: Lmk your thoughts on that

[10/3/23, 9:44:04 AM] Jay Kambo: The issue with the dewalt is the LOA isnt from the brand - it's from Ace hardware giving us the permission but Amazon won't accept that and if there is any IP issues, amazon won't accept that as a document to remove the IP complaint. That's the bigger concern with the dewalt.


If you want to send the refund for the 850 dewalt units, wait until the remaining 650 is sold to someone else, then send us the refund on the 650 we can do that so you aren't out a large amount of cash either

[10/3/23, 11:37:17 AM] Javon: Okay got you I'll send over confirmation when it's been sent

<mark>[10/3/23, 4:48:07 PM] Jay Kambo: Sounds good. Also what about Casper? And Rachel also just told me about the Detoxify, Beauty Josbon and first aid which are gated on all the accounts we wanted to sell on as well.</mark>


<mark>Anything we can do on those? Can you resell those and send us the payments as well?</mark>


<mark>I know it's a lot of product / cash but we are just spread a little thin right now and can't wait for ungating.</mark>

A big problem we are seeing is as soon as a product gets into Amazon, the buybox price is falling by like 30% and we can't sell the product. Not just products we are sourcing from you but across all sources. We are looking for now to fix this or make it more stable

[10/3/23, 5:30:44 PM] Javon: We're still waiting to hear back from the Casper supplier - as for the other items we're going to have to see what we can do and get back to you. We've already burned a couple of relationships getting these refunds like for the starlink , dewalt etc. this could be relatively detrimental to our relationships with vendors

[10/3/23, 5:38:55 PM] Jay Kambo: Okay that makes sense. Even if it's selling it to other people and we need to wait that's fine. The biggest issue is if the LOA is not directly from the brand itself, Amazon won't accept it so the third party vendors that give LOA's it'd hard to get those ungated. Even for Casper amazon rejected those appeals and the IP holder for the brand won't respond to us. Don't want to hurt any relationships with your vendors but also looking at the best way for us to recoup cash

**<u>Exhibit O</u>**

**Casper Correspondence**
**(10.6.23)**

[10/6/23, 2:51:38 PM] Javon: Hey Jay, Hope all is well.

Here is the wire refund receipt and the invoice for fees for the following services/fees/storage.

Unfortunately, we are not going to be able to refund you for the CASPER or the 650 units of dewalt. However, the remaining units of the DEWALT (850 units ($72,250) we are able to get it refunded at a 7% fee.

After balancing out the invoices and credit you are left with $37,286.18.

We have been asking Rachel almost everyday to work with us but do not get any type of response regarding these products out of our warehouse or shipping labels. We are going to book a truck to your San Jose warehouse for the following asins:

B0083UXH22, B000QVDMI0, B0877WJHN7,  B00006IEAR. B01BSURQXO, B00006IEAR

Let me know what you want to do for these we have trucks ready to get them out - once they're out we can send a wire out for the 37k

I don't want this to ruin the relationship we've been building but I can't let my company keep taking hits and losing suppliers - if you want to discuss anything feel free to give me a call so I can clear anything up.

[10/6/23, 2:51:56 PM] Javon: Invoice 0000372.pdf • 2 pages <attached: 00000145-Invoice 0000372.pdf>

[10/6/23, 2:52:30 PM] Javon: Invoice 0000373.pdf • 1 page <attached: 00000146-Invoice 0000373.pdf>

[10/6/23, 2:56:10 PM] Jay Kambo: Hey Javon,

Thanks for sending this over. I understand with the other products and I don't intend to end this relationship either, so let's find a way and see what we can do with the remaining product.

So we have 650 units of dewalt left and 400 units of Casper correct? Where are these products currently? Are those the ASINs that are shipping to the warehouse?

And if it's easier to just hop on a call with me you and Rachel, we can do that too to sort this all out

[10/6/23, 2:57:31 PM] Javon: That would be great - I'll see when my logistics guy can jump on and we'll all discuss what time would work for you both today?

[10/6/23, 2:58:00 PM] Jay Kambo: Rachel May not be available today after 3 - would a Monday sync up work?

[10/6/23, 2:58:23 PM] Javon: Monday would be better actually

## **Exhibit P**

**Dewalt Correspondence**
**(9/27/23–9/28/23)**

==[9/27/23, 1:20:13 PM] Javon: Afternoon! Working on some items for you guys right now including dewalt letter of auth and getting an update on the mueller. Should have answers on both of those shortly.==

[9/27/23, 1:20:18 PM] Javon: There's also 13 products added to 09.27 let me know when you get a chance to check them out

[9/27/23, 1:44:00 PM] Rachel: B07GYXF65S -- On these from the other day, Do you have an estimate of how many units per pallet?

[9/27/23, 1:58:35 PM] Javon: $255 total

[9/27/23, 1:58:52 PM] Javon: Oh sorry misread - I'll get that number

[9/27/23, 2:01:59 PM] Rachel: We are getting customer complaints on the Jungle Gym Kingdom Swing B08RF28Z9C. Customers are complaining that the swing does not come with the straps. Is this a listing issue or a product issue?

[9/27/23, 2:14:55 PM] Javon: That seems to be a listing issue , we referenced other websites selling the product and the product images don't include the straps as well as the reviews

[9/27/23, 2:15:51 PM] Rachel: So the Amazon listing needs to be changed

[9/27/23, 2:22:47 PM] Rachel: From the Amazon reviews on that listing it appears other customers historically have received the chains with the product. To me this says either we got the wrong product, or we are not using the right listing.

[9/27/23, 2:25:48 PM] Javon: I'm contacting the vendor to see what happened it looks like they provided us with the wrong ASIN - the correct one is a variant selling for the same price

[9/27/23, 2:30:44 PM] Javon: B01I4XB0JO

[9/27/23, 3:43:13 PM] Alexander Lans: Did we see your deals for today

[9/27/23, 3:43:42 PM] Javon: There's 13 or 14 products on 09.27

[9/27/23, 4:51:47 PM] Javon: Any feedback on the list?

==[9/28/23, 10:22:21 AM] Jay Kambo: @13057100319 any update on the dewalt LOA? That's the one thing that's kind of up in the air and has an impact on what products we buy right now==

[9/28/23, 10:36:52 AM] Javon: Ya sorry about the delay they made it for my company instead of yours so I had them change it we'll have it over to you today

[9/28/23, 1:56:42 PM] Rachel: Client is asking about the Espresso Machine B0B3GK7HCC. Has ungating started yet?

[9/28/23, 2:01:17 PM] Rachel: Have you heard more here? Removing the product and resending it back to Amazon under the correct ASIN is not really an option because it would eat into Margins. Also, the other listing is selling $10 below the other and we would not make any money on it

[9/28/23, 2:13:33 PM] Alexander Lans: Can I get a current statement or can you tell me what our current credit is?

[9/28/23, 2:17:48 PM] Javon: We are going back and forth with the vendor waiting to get word about the authenticity of the machine before we move on ungating will keep you posted

[9/28/23, 2:19:21 PM] Javon: The sellers selling $10 below list price look like their just offloading stock the price that it's been consistently selling for is the list price - I'm trying to get a remedy from h the vendor as they made the mistake of providing us with the wrong asin. They might be able to cover the cost of logistics for sending it back in etc

[9/28/23, 2:19:36 PM] Javon: Current credit 83787

[9/28/23, 2:21:11 PM] Javon: Also please keep in mind we need responses on lists we send over within 4-6 hours or the products are not guaranteed and it turns into a logistical nightmare for my team to source - any feedback on the products we send you is appreciated even if you are passing on them we are able to sell them elsewhere

[9/28/23, 2:22:55 PM] Javon: The price on this unit is up and down from 21 and 39 per unit. I would open a case and tell amz the issue and have them fix it in the warehouse & List at the selling price you want to sell at

[9/28/23, 3:38:49 PM] Javon: LOA -  (1).pdf • 1 page <attached: 00000998-LOA -  (1).pdf>

[9/28/23, 7:38:39 PM] Javon: Hey did anyone have a chance to check out the products from today there's 19 on the sheet

[9/28/23, 7:38:42 PM] Javon: 09.28

[9/28/23, 7:38:59 PM] Rachel: Not yet.

[9/28/23, 7:39:28 PM] Javon: Let me know if you do

[9/28/23, 7:39:33 PM] Javon: Auth letter look good?

[9/28/23, 7:59:54 PM] Jay Kambo: Auth letter looks good - we will check the products ASAP

[9/28/23, 8:03:08 PM] Javon: Awesome  👑 sorry again for the delay

## **Exhibit Q**

**Dewalt Authorization Letter**





**Ace Hardware Corporation.**
2200 Kensington Ct.
Oak Brook, IL 60523-2100, USA
www.acehardware.com
sales@acehardware.com
844-802-2484

## <u>AUTHORIZATION LETTER</u>

**TO WHOM IT MAY CONCERN**

Gentlemen:

We, the undersigned, hereby authorize **Jay kambo / Urban Empire LLC**
located at **205 E Alma Ave Unit E4 , San Jose , CA 95112, USA** to act on our behalf in all
manners relating to supply, promote,  distribute, sell, exhibit, negotiate and hold responsibility
for after- sale services for below mentioned products worldwide.

- **DEWALT 20V* MAX Cordless Hedge Trimmer, 22 Inches, Tool Only**
 Item #7010784 | Mfr #DCHT820B

We recognize that we are still responsible for the terms and conditions outlined in Retailer Services
Agreement.

This authorization is valid until further written notice from the applicant.
Sincerely,

Calin Moldovan,
Managing Director-United States
Ace Hardware Corporation
.

## **Exhibit R**

**Dewalt Correspondence**
**(10/2/23–10/3/23)**

[10/2/23, 12:59:14 PM] Jay Kambo: What's up,

Rachel is currently training the VA on how to do the analytics sheets on our side so they will be added in soon.

I met with the team today and it looks like dewalt isn't getting ungated on the account we want it to go to. Same thing with Casper.

We've had to refund those clients for those products and we are out a bit of cash right now with the starlink situation as well. Instead of credit, can we get a refund for the credit amount? We are still placing orders, we just need the cash to continue into Q4. I believe the current credit is $87,000. With Dewalt at $127,000 and Casper at $38,000 the total is $252,000.

Aside from the credit, we ordered 800 units of the swing sets and only about 200 or so were shipped into Amazon. The ASIN that was shipped is also the wrong ASIN and if we are to take that ASIN out of amazon and ship it back under the correct ASIN, it would be a negative ROI. Can we do something about the missing units and return the products to the distributor since they shipped out the wrong product?

[10/2/23, 1:50:50 PM] Javon: Hey we can definitely refund the original credit amount we'll have that wire sent today the total is $83,787

For the Casper and dewalt, we're going to have to work on getting refunds from those vendors and will likely get hit with a 5% fee in order to cancel those orders - the same thing happened with starlink we got charged 5% of the purchase order to cancel it. We will keep you posted on that this week and get you the money back as it comes in from these suppliers

[10/2/23, 1:50:55 PM] Javon: Can you send over your wire info

[10/2/23, 1:51:23 PM] Javon: As for the last item , I'm going to see if the vendor can take those back as well

[10/2/23, 1:52:19 PM] Jay Kambo: Got it. That makes sense and I appreciate the accommodation

[10/2/23, 1:53:18 PM] Javon: Of course we'll get this worked out for you guys

[10/2/23, 1:54:06 PM] Javon: We have more products to send you guys today but we don't want to bombard , let us know after you're able to check out those original 15 we put up since they're HOT

[10/2/23, 1:56:43 PM] Jay Kambo: CHASE BANK

02100001

965517862

[10/2/23, 1:57:10 PM] Jay Kambo: <attached: 00000129-PHOTO-2023-10-02-13-57-09.jpg>

[10/2/23, 1:57:13 PM] Jay Kambo: <attached: 00000130-PHOTO-2023-10-02-13-57-13.jpg>

[10/2/23, 1:57:31 PM] Jay Kambo: Top image is routing number for wires

[10/2/23, 2:03:23 PM] Javon: Got it it is the address the CA address?

[10/2/23, 2:03:42 PM] Javon: And league of ecom or urban empire for company name

[10/2/23, 2:06:52 PM] Jay Kambo: 7862 Account Verification letter Urban.pdf • 1 page document omitted

[10/2/23, 2:07:02 PM] Jay Kambo: This should have all the info you need

[10/2/23, 2:41:31 PM] Javon: <attached: 00000136-PHOTO-2023-10-02-14-41-31.jpg>

[10/2/23, 3:50:09 PM] Javon: Hey so we got refund processing for 850 of the dewalts. The other 650 are ready to ship so they aren't giving us refund on that - my compliance guy is confident we can get that account cleared to sell them if you let us handle it to move those 650 units

[10/2/23, 3:50:14 PM] Javon: Lmk your thoughts on that

[10/3/23, 9:44:04 AM] Jay Kambo: The issue with the dewalt is the LOA isnt from the brand - it's from Ace hardware giving us the permission but Amazon won't accept that and if there is any IP issues, amazon won't accept that as a document to remove the IP complaint. That's the bigger concern with the dewalt.


If you want to send the refund for the 850 dewalt units, wait until the remaining 650 is sold to someone else, then send us the refund on the 650 we can do that so you aren't out a large amount of cash either

[10/3/23, 11:37:17 AM] Javon: Okay got you I'll send over confirmation when it's been sent

[10/3/23, 4:48:07 PM] Jay Kambo: Sounds good. Also what about Casper? And Rachel also just told me about the Detoxify, Beauty Josbon and first aid which are gated on all the accounts we wanted to sell on as well.


Anything we can do on those? Can you resell those and send us the payments as well?


I know it's a lot of product / cash but we are just spread a little thin right now and can't wait for ungating.

A big problem we are seeing is as soon as a product gets into Amazon, the buybox price is falling by like 30% and we can't sell the product. Not just products we are sourcing from you but across all sources. We are looking for now to fix this or make it more stable

[10/3/23, 5:30:44 PM] Javon: We're still waiting to hear back from the Casper supplier - as for the other items we're going to have to see what we can do and get back to you. We've already burned a couple of relationships getting these refunds like for the starlink , dewalt etc. this could be relatively detrimental to our relationships with vendors

[10/3/23, 5:38:55 PM] Jay Kambo: Okay that makes sense. Even if it's selling it to other people and we need to wait that's fine. The biggest issue is if the LOA is not directly from the brand itself, Amazon won't accept it so the third party vendors that give LOA's it'd hard to get those ungated. Even for Casper amazon rejected those appeals and the IP holder for the brand won't respond to us. Don't want to hurt any relationships with your vendors but also looking at the best way for us to recoup cash

## Exhibit S

**Dewalt Correspondence**
**(10.6.23)**

[10/6/23, 2:51:38 PM] Javon: Hey Jay, Hope all is well.

Here is the wire refund receipt and the invoice for fees for the following services/fees/storage.

Unfortunately, we are not going to be able to refund you for the CASPER or the 650 units of dewalt. However, the remaining units of the DEWALT (850 units ($72,250) we are able to get it refunded at a 7% fee.

After balancing out the invoices and credit you are left with $37,286.18.

We have been asking Rachel almost everyday to work with us but do not get any type of response regarding these products out of our warehouse or shipping labels. We are going to book a truck to your San Jose warehouse for the following asins:

B0083UXH22, B000QVDMI0, B0877WJHN7,  B00006IEAR. B01BSURQXO, B00006IEAR

Let me know what you want to do for these we have trucks ready to get them out - once they're out we can send a wire out for the 37k

I don't want this to ruin the relationship we've been building but I can't let my company keep taking hits and losing suppliers - if you want to discuss anything feel free to give me a call so I can clear anything up.

[10/6/23, 2:51:56 PM] Javon: Invoice 0000372.pdf • 2 pages <attached: 00000145-Invoice 0000372.pdf>

[10/6/23, 2:52:30 PM] Javon: Invoice 0000373.pdf • 1 page <attached: 00000146-Invoice 0000373.pdf>

[10/6/23, 2:56:10 PM] Jay Kambo: Hey Javon,

Thanks for sending this over. I understand with the other products and I don't intend to end this relationship either, so let's find a way and see what we can do with the remaining product.

So we have 650 units of dewalt left and 400 units of Casper correct? Where are these products currently? Are those the ASINs that are shipping to the warehouse?

And if it's easier to just hop on a call with me you and Rachel, we can do that too to sort this all out

[10/6/23, 2:57:31 PM] Javon: That would be great - I'll see when my logistics guy can jump on and we'll all discuss what time would work for you both today?

[10/6/23, 2:58:00 PM] Jay Kambo: Rachel May not be available today after 3 - would a Monday sync up work?

[10/6/23, 2:58:23 PM] Javon: Monday would be better actually